932 F.2d 1265
 55 Fair Empl.Prac.Cas. 1516,
56 Empl. Prac. Dec. P 40,757
Joy CHARLES, Appellant,
v.
ALLSTATE INSURANCE COMPANY; and, Denise Schaefer, Market
Claim Manager of Allstate Insurance Company, Appellees.
 No. 90-1790.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 12, 1991.
Decided May 15, 1991.
 
 John W. Walker, Little Rock, Ark., for appellant.
 Bruce R. Lindsey, Little Rock, Ark., for appellees.
 Before FAGG, SNEED* and LOKEN, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Charles sued Allstate under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e-2 (1988) and 42 U.S.C. Sec. 1981 (1988) alleging that Allstate and one of its managers, Denise Schaefer, discriminated against her on the basis of sex and race when they discharged her. She sought reinstatement, back pay, and other lost benefits. After a bench trial, the district court found that defendants offered legitimate reasons for their decision to discharge Charles. The district court also found that Charles failed to show that the defendants' proffered reasons were a pretext for discrimination and dismissed plaintiff's claim. Charles appeals from the trial court's decision entering judgment for defendants. We affirm.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 Allstate hired Joy Charles, a black woman, in July 1978 as a telephone claims adjuster. She performed very well and was promoted in October 1982 to Unit Claims Manager. She was promoted again in August 1984 to Casualty Claims Manager, the position she held until March 1989, when Allstate discharged her because of poor job performance.
 
 
 3
 Charles characterized herself as having been, at all times, an excellent employee. On the other hand, while her original supervisors Elrod, and his direct supervisor, Cooper lauded her for her loyalty and commitment to Allstate, they also noted that there was significant room for improvement in her performance, and that she accepted constructive criticism very poorly.
 
 
 4
 Her negative response to a generally positive employment evaluation, made in August 1986 by Elrod, is illustrative. After Charles' second year as a Casualty Claims Manager, Elrod gave her an "overall performance rating of 'meets' (performance meets performance level for the position)." Findings of Fact and Conclusions of Law at 7, Charles v. Allstate Ins. Co., No. LR-C-88-595 (Mar. 14, 1990) [hereinafter Findings]. Charles took exception to the rating, declaring that her performance should have been rated as exceeding the expected level for the position because she was putting forth her best efforts. She felt that failures she perceived to be beyond her control, even though they involved responsibilities that were part of her job description, should not count against her in her job-performance evaluations. She refused to sign the evaluation and complained in writing to Cooper.
 
 
 5
 Cooper met with Charles, and later he set forth his observations in a memorandum. He stated that Charles' reaction to the evaluation indicated a lack of maturity that contributed to other minor difficulties preventing her best efforts from resulting in superior performance. Despite their concerns about her resistance to corrective criticism, Cooper and Elrod both believed Charles' performance could improve over time. It appears that the overall, positive tenor of Charles' first two years as Casualty Claims Manager was due more to Elrod's relaxed management style, than to Charles' actual job performance, or attitude. Her aloof and somewhat hostile demeanor continued to be a liability throughout her tenure at Allstate.
 
 
 6
 Defendant Denise Schaefer replaced Elrod as Market Claims Manager in November 1986 and became Charles' direct supervisor. Nearly coincident with Schaefer's arrival was a major reorganization of Allstate's claims procedures. As a result of the change, the company increased the responsibilities of all claims managers, including those of Charles. The change also created several job openings. Schaefer was in a position to approve or reject applicants for those jobs.
 
 
 7
 Charles was interested in Allstate's affirmative action campaign. She expressed concern to Schaefer about her hiring practices, and questioned Schaefer's commitment to Allstate's affirmative action program. Charles identifies this confrontation as the origin of her difficulties.
 
 
 8
 In addition to voicing her concerns directly to Schaefer, Charles, in conversations with her fellow claims managers, expressed dissatisfaction with Schaefer's minority hiring practices. At the time of these discussions with the other managers, she knew, but failed to disclose to them, that Schaefer's most recent hire was, in fact, a black woman. When Schaefer was apprised of the claims managers' concerns about her hiring practices, she conferred with her supervisor, Cooper, to assure herself that there were no affirmative action guidelines of which she was unaware. There was no such guideline.
 
 
 9
 In August 1987, Charles' annual progress evaluation, her first after the reorganization of Allstate's claims procedures, and the first conducted by Schaefer, resulted in a rating of "acceptable but needs improvement." Charles flatly rejected Schaefer's criticisms of her performance, and instead claimed that Schaefer made the negative evaluation in retaliation for the challenge to her hiring practices. Thereafter, evaluations of Charles' performance continued to show a lack of improvement. Charles continued to contend that her inability to satisfy Schaefer's expectations was a retaliatory response on the part of Schaefer to a claim filed by Charles with the Equal Employment Opportunity Commission (EEOC) in March 1988, alleging discrimination on the basis of sex and race.
 
 
 10
 Charles continued the downward spiral and was placed on "Job-in-Jeopardy" status in October 1988. Her relationship with Allstate and Schaefer became increasingly adversarial and defensive. Allstate discharged her on March 14, 1989.
 
 
 11
 The district court, in deciding this case, employed the familiar legal framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the McDonnell Douglas standard, the plaintiff must first make out a prima facie case of discrimination. To do this, the plaintiff merely needs to show that she is a member of a protected class, that she was qualified for the position, and that she was discharged from the job. See id. at 802, 93 S.Ct. at 1824. The burden then shifts to the employer to state a nondiscriminatory reason for its employment decision. Id. In order to prevail ultimately, the plaintiff must show that the employer's proffered reason is a pretext for discrimination. Id. at 804, 93 S.Ct. at 1825.
 
 
 12
 The district court found, as it was required to do, that Charles made a prima facie case of discrimination. She is a black woman, she had the requisite qualifications for the position of Casualty Claims Manager, and she was fired. The district court then made extensive findings of fact with respect to Allstate's and Schaefer's proffered reasons for the discharge, and it concluded after specific findings that defendants' reasons were legitimate.
 
 
 13
 It found, first, that Charles, without disclosing her interest, initiated the application of a friend or acquaintance for a position at Allstate that required the handling of large sums of money. Charles also knew, but did not disclose, that the applicant had, in addition to a poor employment record, a history of financial problems. The court stated that "[h]er failure to disclose her relationship with [the applicant] and her failure to reveal important information pertinent to [the applicant's] qualifications clearly warranted the criticism expressed in Ms. Charles' [evaluation]." Findings at 19.
 
 
 14
 Second, Charles was found to have refused to accept responsibility for resolving "routine business problems" that were clearly part of her job. One such problem was a dispute over file transfers between claims units. The court found that Charles' refusal to involve herself in the dispute justified criticism of her managerial performance. The court noted that the person who replaced her promptly resolved the inter-unit transfer disputes.
 
 
 15
 With respect to the meeting that Charles arranged between the other claims managers and Schaefer to discuss Schaefer's hiring practices, the district court found that Charles' suggestion that Schaefer discriminated against black applicants was meritless. The court concluded that Schaefer made a genuine effort to inform herself of, and comply with, Allstate's affirmative action policies. Further, while Schaefer was "not pleased that her commitment to Allstate's Affirmative Action Program was possibly being questioned, the [district court found] that the meeting and the plaintiff's involvement therein did not cause or contribute to any of the plaintiff's subsequent employment difficulties up to and including her termination." Findings at 16.
 
 
 16
 Finally, the district court found that "after the reorganization of Allstate's operation starting in January 1987, the plaintiff did not satisfactorily perform her important duties as casualty claim manager. And her supervisors sincerely believed that her performance was inadequate and, in fact, deteriorating over time. The relationship became defensive and adversarial because of the attitude of the plaintiff." Findings at 21. The district court, on the basis of those findings, concluded that Schaefer and Allstate had successfully rebutted the prima facie case of discrimination made by Charles. That is, that Schaefer had articulated nondiscriminatory reasons for recommending that Charles be discharged, and that the reasons were not a pretext for racial discrimination.
 
 II.
 JURISDICTION
 
 17
 The district court had jurisdiction under 28 U.S.C. Sec. 1343 (1988). This court has jurisdiction under 28 U.S.C. Sec. 1291 (1988).III.
 
 DISCUSSION
 
 18
 At trial, Charles' principal claim was that Schaefer, as an agent of Allstate, gave her poor performance reviews and ultimately fired her because she was a black woman. During trial, however, Charles introduced an additional disparate treatment claim. Testimony at trial established that two white male managers who were facing disciplinary action were demoted rather than discharged. During trial, Charles claimed that this evidence raised the inference that she had received disparate treatment in that Allstate did not offer her a demotion in lieu of termination.
 
 
 19
 Charles now has abandoned all claims other than the one based on the alleged disparate treatment she received when Allstate failed to offer her a demotion rather than terminate her. This specific issue unfortunately was not addressed by the trial judge in his findings of fact and conclusions of law. Charles claims that Allstate's failure to make an offer to her raised an inference of disparate treatment that was not answered by Allstate. Allstate contends that Charles may not raise this issue on appeal because she did not raise it during trial.
 
 
 20
 Whether plaintiff sufficiently presented the "transfer-in-lieu-of-discharge" issue for consideration on appeal is up to the discretion of this court. Cf. Struempler v. Bowen, 822 F.2d 40, 42 (8th Cir.1987). While the issue is a close one, we conclude, after examining the trial transcript, that plaintiff's presentation of this issue was sufficient to preserve it as a matter for appeal.
 
 
 21
 It follows that the issue is whether the defendants rebutted the prima facie case presented by Charles with respect to the failure to offer a transfer or demotion. The district court found that defendants rebutted Ms. Charles' prima facie claim by presenting evidence that she did not satisfactorily perform her duties as casualty claim manager, and that her performance was deteriorating over time. Especially significant is the district court's finding that the relationship between Charles and defendants became defensive and adversarial because of Charles' attitude. The record fully supports these findings and rebuts the prima facie case.
 
 
 22
 We acknowledge that generally, a trial court's failure to make findings of fact necessitates a remand. See Fogarty v. Piper, 767 F.2d 513, 515 (8th Cir.1985). However, if the record " 'sufficiently informs the court of the basis for the trial court's decision on the material issue, in question' " a remand is unnecessary. Maxwell v. Mason, 668 F.2d 361, 362 (8th Cir.1981) (quoting Finney v. Arkansas Bd. of Corrections, 505 F.2d 194, 213 n. 16 (8th Cir.1974)). Furthermore, "[a]n appellate court may affirm a decision based on incomplete findings if there can be no genuine dispute about how the trial court actually resolved the facts missing from its express findings." Ferguson v. Hill, 846 F.2d 20, 21 (5th Cir.1988).
 
 
 23
 An examination of the whole record shows that the trial court gave appropriate weight to the testimony relating to an alleged practice at Allstate of demoting, rather than discharging, managers who were experiencing performance difficulties. Although it is undisputed that Charles was not offered a transfer prior to her discharge, she failed to show that Allstate had an established policy of transferring its unsuccessful managers back to nonmanagerial positions. Her best evidence was the testimony of Stan Elrod, defendant Schaefer's predecessor. Elrod testified that he did not know whether transfer/demotions were company policy, but that he had made such offers to managers whose performance was unsatisfactory. He appears to have thought it was a company practice to do so because he was the one who offered transfers to two white male managers.
 
 
 24
 Cooper, Elrod's and Schaefer's supervisor, indicated, however, that it was not customary for transfers to be offered to persons in Charles' situation.[1] Although Cooper would have approved if Schaefer had wanted to offer a transfer to Charles, it appears that making the offer was left to Schaefer's discretion. Schaefer was never questioned with respect to this issue. The record does not indicate that she offered transfers to any of her subordinates who were experiencing performance difficulties. Instead, Ms. Schaefer appears to have followed Allstate's established disciplinary procedures. See Tate v. Weyerhaeuser Co., 723 F.2d 598, 604-06 (8th Cir.1983) (holding that the black plaintiffs had failed to prove disparate treatment of black and white employees who were terminated for disciplinary reasons), cert. denied, 469 U.S. 847, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984).
 
 
 25
 Charles has failed to establish that it was, in fact, a company policy to offer transfers to managers who are no longer satisfactorily performing their duties. The district court made specific findings as to why Charles' performance was inadequate and warranted termination. These findings are not undermined by a failure to make specific findings of fact favorable to Charles with respect to Schaefer's decision not to offer a transfer to Charles.
 
 IV.
 CONCLUSION
 
 26
 For the reasons stated above, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Joseph T. Sneed, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation
 
 
 [1]
 The testimony, such as it is, on this point, was as follows:
 Q. by Plaintiff's Counsel: That is the way that you normally treat [i.e., making offers of transfers to,] persons who have long experience and satisfactory performance over a period of time with the company, isn't it?
 A: No.
 Cooper's testimony on this point was cut off by defense counsel's objection, and was not pursued further. Trial transcript, Volume X at 183.