UNITED STATES of America, Appellee,

v.

Marcus Stephen LEGO, Appellant.

No. 87–5169.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 9, 1988.

Decided Aug. 25, 1988.

Ceciliam M. Michel, Minneapolis, Minn., for appellant.

Jon M. Hopeman, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before HEANEY, Circuit Judge, FAIRCHILD,* Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

I.  INTRODUCTION

Marcus Stephen Lego (Lego) was convicted of two counts of possession of a firearm by a felon, in violation of 18 U.S.C.

* THE HONORABLE THOMAS E. FAIRCHILD, Senior United States Circuit Judge for the Sev-   enth Circuit, sitting by designation.

App. § 1202(a)(1).[1] He argues that evidence of a third possession of firearms was admitted in violation of his Fourth Amendment rights and Fed.R.Evid. 404(b). Finding his appeal to be without merit, we affirm.

## II. FACTS

On July 23, 1986, undercover agents of the Bureau of Alcohol, Tobacco and Firearms and the Minnesota Bureau of Criminal Apprehension met with Lego and purchased a .357 caliber revolver from him; on August 4, 1986, the agents again met with Lego but refused to purchase the .22 caliber revolver he offered them because it was too expensive. Based on these two meetings, Lego was indicted on two counts of possession of a firearm by a felon. He remained at large until October 23, 1986, when he was arrested for possession of a third handgun.

On the night of October 23, 1986, plainclothes officers of a special investigation unit of the Minneapolis Police Department were conducting surveillance in a north Minneapolis neighborhood. During the course of their observations, the officers' attention was drawn to a Ford pickup truck, which arrived at and departed from 3016 North Sixth Street[2] on five occasions during a one-hour period. After each visit to other houses in the neighborhood, the truck returned to 3016 North Sixth Street, the driver got out of the truck, went inside the house for a few minutes, and returned to the truck to make another trip. From this activity, the officers surmised that drug deliveries were being made. A check on the license number of the truck revealed that the truck was registered to a known narcotics and stolen property dealer. Officers of the unit who knew this dealer by sight indicated that he was not the driver of the truck. At this point, the plainclothes officers decided to stop the truck "to identify the driver and find out what was going on." The officers testified that they did not decide to search the vehicle at that time.

A uniformed officer in a marked car, Deanna Johnson, was instructed to stop the truck. As the truck pulled into a convenience store in the neighborhood, Officer Johnson pulled in behind it and activated her red lights. Lego got out of the truck, stood beside it, and looked around the back of the truck at Officer Johnson. He fumbled underneath his coat, and reached inside the truck cab into the console area between the two front seats. It appeared to the plainclothes officers observing the stop that Lego either put something into or pulled something from the truck cab. Lego then turned toward Officer Johnson and began walking toward her with his hands in his coat pockets, as she drew her weapon. Officer Johnson ordered Lego to take his hands out of his pockets and to provide her with some identification. Lego handed her his Georgia driver's license. Officer Johnson then ordered Lego to place his hands on the patrol car while she frisked him for weapons. Officer Johnson found a buck knife in a case on his belt, which she confiscated. She finished her patdown search and ushered Lego into the rear seat of the patrol car.

At this point, one of the plainclothes officers, Officer Haugen, joined Officer Johnson. While Officers Haugen and Johnson were conferring, they received a bulletin over the radio that other officers had been warned that someone named "Marcus" was in the neighborhood, and was thought to be armed and dangerous. The officers decided to search the truck. The search of the truck yielded a .22 caliber revolver that was stuffed between the seats. Lego was arrested and transported to jail. Officer Johnson later discovered eight .22 caliber bullets in the backseat of her patrol car, which she turned over to government attorneys.

---

1. Effective November 15, 1986, the provisions formerly contained in 18 U.S.C.App. § 1202(a) were recodified at 18 U.S.C. § 924(e)(1). Firearms Owners' Protection Act, Pub.L. No. 99–308, § 104(a), 100 Stat. 456 (1986). For ease of discussion, we shall refer to the statute as it existed at the time of Lego's indictment.

2. The house at 3016 North Sixth Street was not the target of the surveillance.

Lego was tried for the July 23, 1986 and August 4, 1986 firearms possession charges. The district court[3] denied Lego's motion to suppress the evidence seized on October 23, 1986. Officer Johnson's testimony, the .22 caliber revolver, and the eight .22 caliber bullets recovered from the backseat of Officer Johnson's patrol car were introduced, over Lego's objection, as "other crimes" evidence pursuant to Fed.R. Evid. 404(b). Lego was convicted on both counts and was sentenced to two eighteen-year terms of imprisonment, to be served concurrently.

On appeal, Lego argues that his Fourth Amendment rights were violated because no "articulable and reasonable suspicion" justified the investigatory stop on October 23, 1986, and that the investigatory stop made on that night was really an arrest without probable cause. Lego also attacks the district court's decision to admit the evidence seized that night as "other crimes" evidence under Fed.R.Evid. 404(b). Finally, Lego challenges the legality of his sentence.

## III. DISCUSSION

### A. Articulable Reasonable Suspicion

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court approved of a temporary seizure for investigation when a police officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *Id.* at 30, 88 S.Ct. at 1884. The Court chose the words "articulable" and "reasonable" to characterize the level of suspicion that an officer must have before interfering with an individual citizen's freedom of movement. Lego claims that his actions leading up to his encounter with Officer Johnson were innocuous and not suggestive of any criminal activity, and that Officer Johnson thus had no "articulable reasonable suspicion" to detain him. We do not agree.

At the time the plainclothes officers radioed Officer Johnson to stop the truck, they knew that the driver had made five short trips within a three-block area; that the driver stayed at each destination for a short period of time and returned after each trip to 3016 North Sixth Street, and stayed a few minutes at that address before leaving again; that the registered owner of the truck was a known dealer of drugs and stolen property; and that the registered owner was not driving the truck. From this constellation of facts, the plainclothes officers concluded, not unreasonably, that the driver of the truck may have been up to no good. *See Terry,* 392 U.S. at 5–8, 88 S.Ct. at 1871–73 (investigatory stop legal where officer observed suspects for twelve minutes, saw suspicious conduct). In these circumstances, it would have been "poor police work indeed" for the officers to have failed to investigate Lego's behavior, or to have waited in the gathering darkness for Lego to commit some clearly illegal act. *Terry,* 392 U.S. at 23, 88 S.Ct. at 1881. Accordingly, we hold that the officers had an articulable reasonable suspicion that Lego was engaged in criminal activity, and properly detained him to investigate his conduct.

### B. The Scope of the *Terry* Stop

The distinction between a stop and an arrest is one of degree, so it is not surprising that courts have not come up with a bright-line test to determine when a stop is transformed into an arrest. Instead, courts have tended to follow a laundry-list approach. *See, e.g., United States v. White,* 648 F.2d 29, 34 (D.C.Cir.) (various factors listed, but not weighted or compared), *cert. denied,* 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233, 70 L.Ed.2d 235 (1981). The length of time of the encounter between the officer and the citizen is typically given great attention by courts considering the constitutionality of investigatory stops, because it is a direct measure of the degree to which a citizen's freedom of movement has been curtailed. But an individual's pri-

---

**3.** The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

vacy interest is also measured by the degree of fear and humiliation that the police conduct engenders. *United States v. Serna–Barreto*, 842 F.2d 965, 967 (7th Cir. 1988). This brings us to Lego's second complaint. He argues that the investigatory stop turned into an arrest when Officer Johnson pointed her weapon at him, or at the very latest, when she placed him in the rear of her patrol car without formally arresting him. While it would be an unhappy day for us all if police officers could point a weapon at any individual that they had an "articulable reasonable suspicion" of engaging in criminal conduct, or could confine a suspect in a police car without more than just a suspicion, we think that there were other justifications for Officer Johnson's actions in this case.

■ The district court found, and we have no reason to doubt, that Lego reached into the cab of the truck as Officer Johnson pulled in behind the truck. Lego then turned around, hands in his pockets, and began walking toward Officer Johnson in her parked patrol car. Confronted with this apparent threat, we think it was only prudent for Officer Johnson to draw her weapon in order to ensure her own safety. While we are troubled by the thought of allowing the police to stop citizens at gunpoint in order to ask a mere question, we are unwilling to hold that a police officer has to effectuate an investigatory stop under constraints that might endanger the officer's personal safety, particularly where, as here, the suspect made what is known as a "furtive gesture" (reaching into the truck cab), and then advanced on the officer with his hands in his pockets. Other courts reviewing similar facts have agreed that an officer can point a gun at a suspect without transforming an investigatory stop into an arrest. *Serna–Barreto*, 842 F.2d at 967–68; *United States v. Manbeck*, 744 F.2d 360, 377 (4th Cir.1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985); *United States v. Merritt*, 695 F.2d 1263, 1272–74 (10th Cir.1982), *cert. denied*, 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed.2d 286 (1983); *United States v. Harley*, 682 F.2d 398, 400–02 (2d Cir.1982). We thus hold that Officer Johnson's display of a weapon in these circumstances did not transform the investigatory stop into an arrest.

■ The justification for the investigatory stop did not, as Lego contends, evaporate after Lego had provided Officer Johnson with his driver's license. Johnson had frisked Lego by this time, and had removed a weapon (the knife) from him, and according to her testimony, thought it safest to place him in the patrol car while she checked for outstanding warrants. Lego says that confining him to the patrol car during this time was tantamount to arrest. We do not see it that way. Officer Johnson had an armed and possibly dangerous suspect on her hands, and had not had an opportunity to check his identification. The obvious exigencies of the situation authorized Officer Johnson to continue her investigatory stop until the situation stabilized and she could determine if full custodial arrest and detention were warranted. *Manbeck*, 744 F.2d at 377; *United States v. Lee*, 372 F.Supp. 591, 593 (W.D.Pa.), *aff'd without opinion*, 505 F.2d 731 (3d Cir.1974), *cert. denied*, 420 U.S. 933, 95 S.Ct. 1138, 43 L.Ed.2d 407 (1975). While we are sensitive to the possibility that the latitude given police officers to conduct investigatory stops may be subject to abuse, we do not believe that Officer Johnson acted to harass or intimidate Lego by placing him in the rear of her patrol car.

## C. The Search of the Pickup Truck

■ Lego argues that even if the investigatory stop and confinement in the patrol car were legal, the search of his truck exceeded the scope of an investigatory stop. Again, we do not think so. In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Court indicated that the rationale stated in *Terry* for protective searches, *i.e.*, "the protection of the police officer and others nearby," *Terry*, 392 U.S. at 29, 88 S.Ct. at 1884, permits police officers to conduct a limited search for weapons in a vehicle that the suspect has recently left. *Long*, 463 U.S. at 1049–50, 103 S.Ct. at 3480–81. This reasoning applies with full force here, because Lego

had just exited his vehicle and because Officers Johnson and Haugen were privy to reports from fellow officers that a man named "Marcus" was armed and dangerous and in the neighborhood. Having learned that the suspect in the backseat of the patrol car was named "Marcus" Stephen Lego, it was reasonable for the officers to search the truck for weapons before allowing Lego to return to it. Accordingly, we conclude that the search of the truck and seizure of the pistol did not violate Lego's Fourth Amendment rights.

### D. Admission of Evidence from the October 23, 1986 Arrest

■ Lego next takes the district court to task for admitting the evidence from the October 23 arrest under Fed.R.Evid. 404(b). Lego's asserted defense at trial was entrapment. The government sought to introduce Officer Johnson's testimony and the weapon and bullets seized on October 23—evidence about an event that occurred some two and one-half months after the charges in the indictment—to rebut Lego's defense by showing that Lego was predisposed to possess firearms. *See United States v. Dion,* 762 F.2d 674, 688 (8th Cir. 1985), *rev'd on other grounds,* 476 U.S. 734, 106 S.Ct. 2216, 90 L.Ed.2d 767 (1986). We have some reservations about using evidence of a subsequent criminal act to show a defendant's state of mind at an earlier time. *See United States v. Jimenez,* 613 F.2d 1373, 1376 (5th Cir.1980). We do, however, think that this evidence of repetitive involvement in the same type of criminal activity shows that Lego did carry weapons, at least on occasion, and thereby negated his argument that he only carried weapons on the dates charged in the indictment because of the inducement of the government agents. Moreover, we conclude that this evidence was more probative than prejudicial, and thus did not require exclusion under Fed.R.Evid. 403. Accordingly, we hold that the district court

did not abuse its discretion in admitting this evidence.

### E. Lego's Sentence

■ Lego's last salvo is aimed at his sentence. He argues that the language of 18 U.S.C.App. § 1202(a)(1) is ambiguous because it does not state whether or not the fifteen-year sentence provided is a mandatory minimum or mandatory maximum sentence. This ambiguity, Lego contends, triggers the rule of lenity and commands a conclusion that the district court erred in imposing an eighteen-year term of imprisonment rather than the fifteen-year term set forth in the statute. We cannot accept this argument. The language of the statute is not ambiguous; it provides that a criminal offender with three prior felony convictions "shall be imprisoned *not less* than fifteen years." 18 U.S.C.App. § 1202(a)(1) (emphasis added). It is clear to us that this language sets out a mandatory minimum sentence, not a mandatory maximum sentence. *See United States v. Blannon,* 836 F.2d 843, 845 (4th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988).[4] The district court is vested with broad discretion in sentencing, and if the sentence is within the statutory limits, it will not be reviewed in the absence of extraordinary circumstances. *Id.* Because we agree with the *Blannon* court that the language of 18 U.S.C.App. § 1202(a)(1) imposes no limit on the sentence that can be given, *id.,* and because there are no extraordinary circumstances here to warrant review of the district court sentence, we hold that Lego was properly sentenced to eighteen years imprisonment on each count. Accordingly, Lego's conviction and sentence is in all respects affirmed.

---

**4.** *See also United States v. Eggleton,* 799 F.2d 378, 384 (8th Cir.1986), where a panel of this circuit held that similar language in 18 U.S.C. § 2113(e), that a violator of that statute "shall be imprisoned not less than ten years," imposed no statutory limitation on the district court's sentencing discretion.