**UNITED STATES of America, Appellee,**

v.

**John B. CRAWFORD, Appellant.**

**No. 89–1509.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 9, 1989.

Decided Dec. 14, 1989.

E. Ann Wright, Kansas City, Mo., for appellant.

Linda L. Parker, Kansas City, Mo., for appellee.

Before LAY, Chief Judge, SNEED,[*] Senior Circuit Judge and McMILLIAN, Circuit Judge.

LAY, Chief Judge.

John Crawford pleaded guilty to one count of possession of cocaine with intent to distribute under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (1982 & Supp. V 1987). As a condition of the plea he reserved his right to appeal the district court's[1] refusal to suppress the evidence of cocaine discovered in a search of his car. He argues on appeal that the search violated his rights under the fourth amendment of the Constitution. In addition, he asserts that the district court erred by not reducing his offense level under the sentencing guidelines for acceptance of responsibility or for being a minor participant.

Facts

On May 13, 1988, the police in Kansas City, Missouri, maintained surveillance outside of an apartment building that contained six or more units. One of the apartments belonged to Derrick Blackman, whom the police had arrested for transporting cocaine earlier that day at the Amtrak station. While the police were waiting for a warrant to search Blackman's apartment, they observed the defendant, John Crawford, run past the front of the building and

---

*  The HONORABLE JOSEPH T. SNEED, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

**1.** The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

around to the back where he entered the rear door. The police did not see which of the building's units Crawford entered, nor did the police know at that time which of the units belonged to Blackman. Roughly five minutes later Crawford emerged from the front door carrying a bicycle which he placed in a car. He then re-entered the building, and soon came out again carrying a bundle that appeared to be two coats. This he also placed in the car. The police officers observed him look up and down the street repeatedly.

Crawford got in the car and drove off. A plainclothes police officer followed approximately ten feet behind in an unmarked car. Crawford slowed and pulled to the right to let the unmarked car pass, but the officer did not pass. Crawford then drove faster and made several right turns. Finally, an officer in a marked car turned on his lights and stopped Crawford's car.

The police officer asked Crawford for his driver's license, but Crawford could not produce one. The officer then asked him to step from the car, frisked him for weapons, and informed him he was under arrest for failing to produce a driver's license.[2]

The police then searched the vehicle. The officers testified that the purpose of the search was to inventory the items in the vehicle before it was taken into police custody in order to account for the property when the vehicle was given back. The search uncovered a large bag containing clothing as well as cocaine and packets of cash.

Discussion

Crawford argues that the initial stop of his vehicle violated his fourth amendment right to be free from unreasonable search or seizure. Because the initial stop was unreasonable, he asserts, the evidence gained in the subsequent search could not be used against him. The district court denied the motion to suppress this evidence because it concluded that the seizure was an investigatory stop supported by a rea-

sonable suspicion of criminal activity, and thus was permissible under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We must respectfully disagree.

The Supreme Court in *Terry* held that the police could, without a warrant, briefly stop and ask questions of a person whom the police reasonably suspected of participation in criminal activity. *Terry*, 392 U.S. at 20–23, 88 S.Ct. at 1879–83. The Court stated that the suspicion must derive from more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id.* at 27, 88 S.Ct. at 1883. The police must point to particular facts and inferences rationally drawn from those facts that, when taken together and in light of the officer's experience, reasonably warrant suspicion of criminal activity. *United States v. Campbell*, 843 F.2d 1089, 1093 (8th Cir.1988). Obviously, conduct typical of a broad category of innocent people provides a weak basis for suspicion. *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1979). However, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty' but the degree of suspicion that attaches to particular types of noncriminal acts." *United States v. Sokolow*, — U.S. ——, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1 (1989) (quotations omitted).

The government urges that the *Terry* stop was permissible because: (1) a suspect arrested on a drug charge lived in one of the apartments in the building under surveillance; (2) an unknown man ran past the front of the building, around to the back, and entered; (3) he emerged carrying a bicycle, re-entered, and emerged again with a bundle of coats; (4) he put these items in a car; (5) during this time he looked up and down the street; (6) he drove off, and when followed closely, he at first pulled over, and then sped up and made several right turns. When taken together these facts cannot, as a matter of law, provide an objectively reasonable suspicion that Crawford was involved in criminal activity.

---

**2.** Either then or at some later time an officer noticed that the car had no front license plate and no city sticker. Although the record is not

clear on these violations, it appears Crawford also was arrested for the city sticker offense.

Carrying a bicycle and bundle of coats from an apartment building to a car is conduct typical of countless innocent people. Furthermore, Crawford's actions in driving away from the apartment building added nothing suspicious to his visit to the apartment. A reasonable, innocent person might well act as Crawford did if an unknown, unmarked car followed closely ten feet behind him. A natural and unsuspicious reaction would be to pull over and allow the closely following car to pass. When, as here, the car did not then go by, any ordinary person would immediately become concerned he was being followed, and might consider evasive maneuvers. Under these circumstances Crawford's attempts to avoid the person tailgating him were not suspicious actions. Moreover, the police charged him with no moving violations.

The fact that the apartment building contained a unit rented to Blackman contributed nothing objective to the suspiciousness of Crawford's conduct. The police had absolutely no basis to connect Crawford with the man they arrested at the Amtrak station. Crawford neither arrived at the apartment nor departed with Blackman. He used no vehicle or other property known to be connected with Blackman. The police could not tell if he entered Blackman's apartment or some other unit in the building. No confidential informant advised the police of his possible arrival. With no such verifiable link between Crawford and Blackman, any association between the two in the minds of the police amounts to a quintessential example of a hunch.

In *United States v. Buchannon*, 878 F.2d 1065, 1066–67 (8th Cir.1989), the defendant arrived at a house under surveillance by police awaiting a warrant to search it. The defendant entered the house and then left at the same time as the resident of the house, the suspect under surveillance. The two drove off in separate cars heading in the same direction. The officers did not know and had never seen the defendant, although they knew the suspect. A divided panel of this court held that a reasonable suspicion existed to stop the defendant's car. According to the majority, the fact that the defendant visited the home of a suspected drug dealer and left simultaneously with him sufficiently connected the defendant with possible criminal activity.[3]

In the present case, the connection between the known suspect Blackman and the defendant Crawford is much more tenuous. Whereas the police in *Buchannon* knew the defendant had entered the suspect's residence, the police in the instant case did not know whether Crawford went into Blackman's apartment or some other. Furthermore, unlike in *Buchannon*, Crawford did not exit together with Blackman or do anything else that might link him to the suspect. *Contrast United States v. Lego*, 855 F.2d 542 (8th Cir.1988) (*Terry* stop upheld where officers observed pickup truck arrive at a house, stay a brief while, and depart five times within an hour, and where license plate check revealed truck was owned by known drug dealer, although police could see driver was not that drug dealer); *United States v. Eisenberg*, 807 F.2d 1446 (8th Cir.1986) (reasonable suspicion found when informant said source would be two men in red 1977–78 car, and such a car approached residence under surveillance and then abruptly turned away); *United States v. Jones*, 759 F.2d 633 (8th Cir.), *cert. denied*, 474 U.S. 837, 106 S.Ct.

---

**3.** Judge Fagg dissented stating:

The only facts arguably tying [defendant] to the suspected drug house are that he physically appeared there, entered, left at the same time as the target of the investigation, and drove his own car for a short distance in the same general direction as the target. These activities do not, in and of themselves, suggest criminal activity and could be performed by a very broad category of predominantly innocent visitors to the house.

Furthermore, by far the bulk of the officers' incriminating information did not directly relate to [defendant] or his conduct, but to [the target], with whom [defendant] had no known improper connection. In the absence of some additional factors suggesting [defendant's] involvement in the drug operation or with [the target], I cannot agree these circumstances amount to the objective, reasonable suspicion necessary to conduct a *Terry*-type stop.

*Id.* at 1068 (Fagg, J., dissenting) (citations and quotations omitted).

113, 88 L.Ed.2d 92 (1985) (reasonable suspicion existed to stop defendant when police saw known burglar walking away from apartment and called him over, and defendant, who was waiting at front door for answer to security buzzer, took off running after observing the police questioning the known burglar). Merely entering and leaving a multi-unit apartment complex where a known drug trafficker resides is not an objectively suspicious fact absent some link to the trafficker.

The government emphasizes, however, that Crawford approached the building at a run and looked up and down the street several times as he entered and left.[4] While it might be quite common for an innocent person to be in a hurry, it seems slightly less likely that a person running late would repeatedly look up and down the street. Nevertheless, we believe that the degree of suspicion attaching to this conduct is insufficient to serve as the sole grounds for the seizure. These acts are too susceptible to innocent explanation. Although such conduct might contribute to a finding of a reasonable suspicion if viewed along with other suspicious acts, the other acts in this case do not provide that needed support. If this minimally suspicious conduct by itself allows the police to stop Crawford, a very large group of innocent people could be randomly stopped upon leaving an apartment complex where a known drug trafficker resided.

*Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1979), lends direct support to our decision. In *Reid* the defendant arrived on an early morning flight from a drug source city in Florida, he had only carry-on luggage, he walked several feet in front of another man carrying an identical bag, and he occasionally looked over his shoulder toward the other man. On this basis the police stopped him. The Supreme Court stated that the first three

articulated facts described "a very large category of presumably innocent travelers." *Id.* at 441, 100 S.Ct. at 2754. As to the agent's belief that the defendant and his companion attempted to conceal that they travelled together, the Court concluded it was "simply too slender a reed to support the seizure in this case" and "was more an inchoate and unparticularized suspicion·or 'hunch' than a fair inference in the light of his experience." *Id.* (citation and quotation omitted). Crawford's actions amount to an equally slim reed on which to rest the seizure in this case.

The order denying the motion to suppress is reversed. The conditional plea of guilty and judgment of conviction are vacated. The defendant shall be released from incarceration forthwith and shall report immediately to the district court to apply for release pending trial or new proceedings.

---

4. The government also states that Crawford *appeared* nervous. However, the government offers no specific facts to support this description other than that he ran up to the apartment and looked up and down the street. *Contrast United States v. Campbell,* 843 F.2d 1089, 1090 (8th Cir.1988) (hands visibly trembling and voice quivered). The statement that he appeared nervous, therefore, is a mere rephrasing of the other evidence, offered in an attempt to enhance the value of that evidence. This court must consider only specifically articulated facts. *Terry v. Ohio,* 392 U.S. at 21, 88 S.Ct. at 1879.