REQUESTED BY: James S. Jansen, Douglas County Attorney
Your correspondence indicates that your office has been contacted by the Douglas County Sheriff's Office for the purpose of obtaining an Attorney General's opinion regarding the issue of whether law enforcement officers can legally detain an individual for a reasonable period of time in order to effectuate the service of a protection order. In particular, the Douglas County Sheriff's Office inquires as to the following: "1) May law enforcement officers legally detain a person in order to effectuate the service of a Protection Order? and 2) If law enforcement may detain such individuals, how long can they be detained?" Our response to the foregoing inquiry is set forth below.
 RELEVANT FACTS
Your opinion request includes a letter from Captain Steve Freese of the Douglas County Sheriff's Department (the "Department"), which specifies the underlying facts necessitating the instant opinion request. Captain Freese's letter indicates that as part of the Department's efforts to ensure forthwith service of Domestic Violence Protection Orders, the Department is implementing a computer "locate" system, through which law enforcement officers can determine, via a Douglas County record check, if an individual is a respondent to an unserved protection order. Captain Freese's letter also indicates that it is a common scenario for officers to respond to a disturbance call and be advised by the petitioner that the respondent needs to be served with a protection order. It is also not uncommon for the respondent to be at the scene of the disturbance when the officers arrive. Captain Freese's letter further provides that with the implementation of the "locate" system, officers who legally stop any individual for any reason, will be able to check the local system to determine if said individual is a respondent to an unserved protection order. If such a local record check reveals that the individual is an unserved respondent, the law enforcement officers briefly detain him/her until service of the protection order can be effectuated.
Captain Freese's letter also indicates that unlike other counties in Nebraska, Douglas County utilizes specially trained and certified Civilian Civil Process Servers. These process servers are only on duty during normal business hours of the court, and as such, are not readily available during off hours, holidays and weekends. Because of calls for service and other assignments, it is not feasible or practical for an on-duty patrol deputy to have, on hand, the numerous protection orders requiring service. As a result, the current practice provides for the Civil Process Server Supervisor to be on call during off hours to provide immediate response to calls for the service of protection orders when Douglas County area law enforcement officers are on scene with the respondent. Captain Freese's letter indicates that it generally takes 45 minutes to one hour for the Civil Process Server to arrive on scene and serve the respondent with the protection order.
Captain Freese's letter also provides that the current understanding of the Douglas County Sheriff's Office Civil Process Division is that law enforcement officers do indeed have the authority to legally detain a person for a reasonable amount of time to effectuate service of a protection order. Captain Freese indicates that the authority to temporarily detain someone against his/her will for the service of a protection order is based on the nature of domestic violence and the potential for future violence if service is not effectuated immediately. Captain Freese explains that "[b]ased on the potential for violence, the brief detention of an individual for service of a protection order is, in the Department's opinion, completely reasonable, if not absolutely prudent."
 ANALYSIS
Initially, it should be noted that our research has disclosed no case law dealing with the subject matter of detention of an individual for the purpose of effectuating service of a previously issued protection order. As a result, our response to your inquiry will be based upon general constitutional principles and their applicability to the specific facts underlying the opinion request.
Generally, once the purpose for making contact with an individual by a law enforcement officer has been completed, the individual has the right to proceed, unless during the period of lawful detention, the law enforcement officer develops other information reasonably justifying a continued investigative detention, commonly referred to a "Terry stop." See Terry v.Ohio, 392 U.S 1, 88 S. Ct. 1868 (1968). The test to determine if an investigative stop was justified is whether the police officer had a reasonable suspicion, based on articulable facts, which indicate that a crime had occurred, was occurring, or was about to occur and that the individual detained might be involved. State v.McGinnis, 8 Neb. App. 1014, 1020, ___ N.W.2d ___ (2000);State v. Heimstra, 6 Neb. App. 940, 579 N.W.2d 725 (1996). Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause. McGinnis,8 Neb. App. at 1020; State v. Soukharith, 253 Neb. 310, 570 N.W.2d 344
(1997); State v. Tierney, 7 Neb. App. 469, 584 N.W.2d 461 (1998). Where law enforcement officers have reasonable suspicion, they may pursue their investigation either to confirm their suspicion or to dispel the suspicion that crime is afoot. McGinnis,8 Neb. App. at 1020; State v. Oritz, 257 Neb. 784, 600 N.W.2d 805 (1999).
As noted by Wayne R. Lafave, a well known legal treatise writer:
 There are several investigative techniques which can be utilized in the course of a "Terry" stop. The most common is interrogation, which may include both the request for identification and inquiry concerning the suspicious conduct of the person detained, but the officer may also instead conduct a non-search examination of the suspect's person, car, or objects he is carrying . . . sometimes the officer will communicate with others, either police or private citizens . . . to confirm the identification or determine whether a person of that identity is otherwise wanted.
Search and Seizure: A Treatise On the Fourth Amendment, Section 9.2(f), at 51-56 (3rd Edition 1996). There are several activities that officers may undertake in order to determine if an individual "is otherwise wanted." For example, law enforcement officials may detain an individual at the scene of a stop while they check to determine if there are warrants for the arrest of that individual. U.S. v. Hensley, 469 U.S. 221, 105 S. Ct. 675
(1985) (defendant stopped in response to a "wanted flyer" from another department indicating the individual was suspected of robbery); U.S. v. Lego, 855 F.2d 542 (8th Cir. 1998) (detention is proper for the purpose of checking for outstanding warrants).
Although one could argue that law enforcement's detention of an individual for the purpose of effectuating an unserved protection order is not a detention for investigative purposes, this fact alone should not render the detention unreasonable. Under the facts presented, the individual is detained by law enforcement officials based on specific knowledge that said individual is a respondent to an unserved protection order. Certainly, if a law enforcement officer has the authority to detain a person based upon "reasonable suspicion" one could make a strong argument that law enforcement officers should have the authority to detain a person based on knowledge beyond reasonable suspicion; i.e. the existence of an unserved protection order against the individual being detained.
In addition, due to the nature of domestic violence and the potential for future violence if service of the protection order is not effectuated immediately, there is a compelling public policy supporting the authorization of law enforcement officers to detain an individual who is a respondent to an unserved protection order. This legitimate concern for the safety of the potential victim of domestic violence would appear to provide further support for the detention of an individual, at least equal to a "Terry" authorized "reasonable suspicion" detention.
Furthermore, a practical concern also arises if an individual who is a respondent to an unserved protection order is released without service being effectuated. Under such a scenario, the individual is aware of the existence of the protection order, and as a result, may become more difficult, if not impossible, to locate and serve in the future. This potentially increases the danger of the unserved respondent returning to harm the petitioner after being released by a law enforcement official without service being effectuated.
Based on the foregoing, we believe that law enforcement officials have the authority to detain an individual who is a respondent to an unserved protection order for the purpose of effectuating service of same. Furthermore, we believe that 45 minutes to an hour is a reasonable amount of time to detain an individual until he/she is served with the previously issued protection order. In support thereof, we note that the Supreme Court has declined to set a rigid time limitation on detentions such as "Terry stops". U.S. v. Sharpe, 470 U.S. 675,105 S. Ct. 1568 (1985). In determining whether the length of time between the initiation of the stop and the later release or arrest of the individual was reasonable, courts should consider the facts of the particular case. Search and Seizure: A Treatise On the FourthAmendment, Section 9.2(f), at 59. In U.S. v. Oates,560 F.2d 45 (2nd Cir. 1977), the court therein declared that reasonableness depends on factors such as the likelihood of the detainee's involvement in the known or suspected criminal activity. Furthermore, in discussing the parameters of the length of detention, the Supreme Court plurality in Florida v. Royer,460 U.S. 491, 103 S. Ct. 1319 (1983), noted that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." In light of the foregoing, detention of an individual for up to 45 minutes to an hour would appear to be reasonable, so long as that period is no longer than is necessary to effectuate service of the protection order.
 CONCLUSION
While we have found no case law directly addressing the questions presented, we conclude that law enforcement officers can legally detain an individual for a reasonable amount of time to effectuate service on said individual of a previously issued protection order.
Sincerely,
 DON STENBERG Attorney General
 Thomas J. Olsen Assistant Attorney General
Approved:
________________ Attorney General
pc: Timothy F. Dunning, Douglas County Sheriff Captain Steve Freese, Douglas County Sheriff's Office