**UNITED STATES of America, Appellee,**

v.

**Jimmy HOGAN, Appellant.**

No. 93–3794.

United States Court of Appeals,
Eighth Circuit.

Submitted March 18, 1994.

Decided June 3, 1994.

Donald L. Wolff, St. Louis, MO, argued, for appellant.

Hoeward J. Marcus, St. Louis, MO, argued, for appellee.

Before FAGG, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Jimmy Hogan moved the district court to suppress evidence that Drug Enforcement Administration (DEA) agents had seized during a search of his car pursuant to a warrant. The district court denied his motion. Reserving his right to appeal the district court's denial of his motion, Hogan conditionally pled guilty to one count of possession with intent to distribute marijuana and one count of possession with intent to distribute methamphetamine. Hogan now appeals his convictions. We reverse.

## I. BACKGROUND

A confidential informant (CI) contacted DEA Agent Dennis Wichern and advised him that Hogan, an employee at the Chrysler plant in Fenton, Missouri, was selling methamphetamine and marijuana at the plant. The CI stated that another Chrysler employee, Doug Gorum, had shown him methamphetamine that he claimed he had purchased from Hogan. Gorum told the CI that Hogan brought methamphetamine to the plant from his home in DeSoto, Missouri, in his white 1990 Dodge pickup truck. Gorum also told the CI that he had been getting drugs from Hogan for a year. Another Chrysler employee, Robert Jeademann, told the CI that he had been getting methamphetamine and marijuana from Hogan for five years. The CI asserted that he had observed Hogan engage in what he believed to be three hand-to-hand drug transactions. He provided Wichern with a description of Hogan and Hogan's address.

On October 18, 1990, Gorum and Jeademann told the CI that Hogan had assured them that he would be bringing methamphetamine to work the next day. It was determined that Hogan would be working the shift starting at 3:00 p.m. on October 19. According to the CI, the truck was the sole vehicle Hogan used to travel to and from work.

Wichern applied for and received search warrants for Hogan's residence and truck. The affidavit in support of the warrants specifically stated that the drugs were kept or had been kept in Hogan's residence or "within a white colored 1990 Dodge pickup truck, registered to [Hogan], which has in the past transported and in the early afternoon of the nineteenth will be transporting methamphet-

amine and marijuana from DeSoto to the Chrysler Plant." There was no reference made to any other vehicle.

At approximately 11:00 a.m. on October 19, 1990, Wichern and other officers who were participating in the investigation set up surveillance across the road from Hogan's house. At 12:40 p.m. they saw Hogan drive away in a blue 1987 Oldsmobile Cutlass. Wichern radioed Trooper Althage, a uniformed state trooper in a marked patrol unit, and requested that he activate his lights and stop Hogan's car. Althage stopped Hogan at a point between three and five miles from his house.

When Wichern arrived at the scene, he advised Hogan that he had search warrants for Hogan's house and truck. He told Hogan that he suspected that Hogan had drugs in his car and requested permission to search the car. Hogan declined to grant permission, whereupon Wichern decided to impound the car so that he could obtain a search warrant. Wichern testified that he requested that Hogan accompany him back to the house and that Hogan agreed to do so. Wichern's written report, however, stated that he had "informed" Hogan that Hogan would accompany him. It is undisputed that Wichern placed Hogan in handcuffs before placing him into his car and that another agent drove Hogan's car. Hogan's brother, who was living with him at the time, was present at the house when they arrived. The agents patted him down and handcuffed him. Hogan and his brother remained handcuffed outside the house during the searches.

The search of the house revealed a small amount of marijuana, two scales in the kitchen, a police scanner, weapons, and $5600 in cash. The agents found a carton of zip-lock freezer bags in the truck. They then summoned Trooper Althage's narcotics detection dog to sniff the Oldsmobile. The dog reacted in a positive manner to the trunk of the car, indicating the presence of a controlled substance. Wichern drove the car back to his office to maintain it in storage until he obtained a search warrant. The agents placed Hogan under arrest for possession of the marijuana found in the house. They determined not to keep Hogan in custody at that time and left him at his residence after photographing and fingerprinting him.

The affidavit in support of the search warrant application for the car included all the information used to support the earlier search warrant applications, together with the results of the canine sniff and the search of the house and truck. Wichern's subsequent search of the car pursuant to the warrant revealed approximately ½ pound of marijuana and ¼ pound of methamphetamine in the car's trunk.

## II. DISCUSSION

■ Hogan argues that the seizure of his car violated the Fourth Amendment and that the subsequent search was the fruit of the illegal seizure. We review the district court's findings of fact for clear error and its conclusion as to whether the Fourth Amendment has been violated de novo. *United States v. Maholy*, 1 F.3d 718, 720 (8th Cir.1993).

There is no question that the agents seized Hogan's car without a warrant. *See Arizona v. Hicks*, 480 U.S. 321, 324, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347 (1987) (seizure of property occurs when governmental intrusion "meaningfully interferes" with individual's possessory interest). Wichern decided to impound the car at the time that it was stopped and did not allow Hogan further access to it. We must decide whether this warrantless seizure was unlawful under the Fourth Amendment and, if so, whether the unlawful seizure invalidated the subsequent search warrant.

The government argues that Wichern had probable cause to believe the car contained contraband and could thus have searched the car at the time it was stopped under the automobile exception to the warrant requirement. *See Chambers v. Maroney*, 399 U.S. 42, 48–52, 90 S.Ct. 1975, 1979–82, 26 L.Ed.2d 419 (1970) (exception allows police to stop and search automobile without warrant if they have probable cause to believe that vehicle contains contraband). It argues that Wichern's impoundment of the car until he obtained a search warrant was therefore not unlawful. *See id.* at 51–52, 90 S.Ct. at 1980–82 (where warrantless at-the-scene search of

vehicle would be permissible, officers may instead seize car and search it later).

■ The automobile exception requires that the police have probable cause to believe the vehicle stopped contains contraband. We conclude that probable cause did not exist to stop and search the Oldsmobile. The car was not named in the warrant. All the information the agents possessed indicated that Hogan transported drugs to work in his truck and that the truck was the sole vehicle he drove to and from work. Although the agents believed that Hogan intended to bring drugs to work that day, they also knew that Hogan's shift began at 3:00 p.m. and that it was only 12:40 p.m. when he left the house in the Oldsmobile. At most, the agents had a hunch that the drugs from the house or truck might be in the Oldsmobile. The prerequisite to a valid search under the automobile exception, however, is probable cause, not a hunch.

■ The government contends that the agents could lawfully stop and detain Hogan while they searched his home, relying on *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). *Summers* is not applicable, however, for there the police officers encountered the defendant descending the front steps as they were about to execute a warrant to search his house for narcotics. They asked for his assistance in gaining entry to the house and detained him while they searched the premises. *Id.* at 693, 101 S.Ct. at 2589. The Supreme Court held that police may detain occupants of a premises being searched for contraband pursuant to a valid search warrant. The Court balanced the intrusiveness of the detention versus the legitimate law enforcement interests in (1) preventing flight in the event incriminating evidence is found, (2) minimizing the risk of harm to the officers from occupants becoming suddenly violent or frantically trying to conceal or destroy evidence, and (3) orderly completing the search with the occupants' assistance in opening locked doors or locked containers. *Id.* at 701–03, 101 S.Ct. at 2593–95. Here, Hogan was not on his front steps or even near his home. He was stopped three to five miles away, handcuffed, and taken back to his house. The intrusiveness of the detention was therefore much greater than in *Summers*. Further, none of the law enforcement interests set forth in *Summers* apply. Hogan was not aware that a search was about to be conducted and therefore did not pose a risk of flight. There was no risk of harm to the agents from Hogan in a car miles away from the premises. The agents could hardly claim an interest in orderly completing the search with Hogan's aid in view of the fact that they kept him handcuffed and outside the house during the entire search.

■ Even if *Summers* could justify the agents' detention of Hogan, it could not justify the agents' seizure of his car. This was not a situation where agents impounded the car for safekeeping after arresting its owner. Hogan was not under arrest. In addition, Wichern testified that he had decided to impound the car at the time of the stop in order to obtain a search warrant, not for safekeeping. Likewise, the government's contention that Hogan consented to return to his house does not justify the agents' seizure of the car.

Having decided that the seizure of the car was unlawful does not end our inquiry. The admissibility of the drugs found in the search of the car depends on the validity of the search warrant that led to their discovery. *See United States v. O'Neal*, 17 F.3d 239, 244 (8th Cir.1994). If the affidavit accompanying the warrant application, excluding therefrom the evidence obtained as a result of the illegal seizure, presented "sufficient facts to justify a prudent person in the belief that there is a fair probability that contraband or evidence of a crime will be found in a particular place," then probable cause existed for the warrant and the evidence seized in the resulting search is admissible. *See id.* (quoting *United States v. Riedesel*, 987 F.2d 1383, 1390 (8th Cir.1993)); *United States v. Beck*, 662 F.2d 527, 530 (8th Cir.1981) (search warrant based on probable cause as supported by facts untainted by prior illegality constitutes "independent source" for seizing evidence sought to be suppressed).

■ The unlawful seizure allowed the agents to place the car in a position where the narcotics-detecting canine could sniff it.

We conclude that, absent the inadmissible evidence from the automobile seizure and subsequent dog sniff, there would not have been probable cause to support the search of the Oldsmobile. The only evidence the magistrate properly could consider in determining whether there was probable cause to search the car was the CI's information that Hogan drove a truck to work and distributed drugs there, the agent's observation of Hogan leaving his house at 12:40 p.m. driving an Oldsmobile, and the results of the search of the home and truck. This information does not amount to probable cause to search the car: the CI's information did not mention an Oldsmobile, Hogan's departure was innocuous, and the search of his home and truck did not turn up distribution amounts of marijuana or any methamphetamine.

Finally, the government argues that the evidence was admissible under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon,* the Supreme Court held that evidence obtained pursuant to an ultimately invalidated search warrant should not be excluded where the officers executed the warrant with an objectively reasonable good faith reliance on the issuing judicial officer's determination of probable cause. 468 U.S. at 922, 104 S.Ct. at 3420. In *United States v. White,* 890 F.2d 1413, 1419 (8th Cir.1989), *cert. denied,* 498 U.S. 825, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990), we held that the *Leon* good faith exception may apply to some searches conducted under a warrant based on evidence obtained in violation of the Fourth Amendment.

 In order for *Leon* to apply, we must conclude that an objectively reasonable officer could have believed the information contained in the affidavit supporting the search warrant had been lawfully obtained. *White,* 890 F.2d at 1414; *United States v. Curry,* 911 F.2d 72, 78 (8th Cir.1990), *cert. denied,* 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). Here, the facts do not support a conclusion that an objectively reasonable officer could have believed the seizure of the car and subsequent canine sniff was lawfully obtained. These facts are not "close enough to the line of validity" to "push this case into the gray area created by *Leon.*" *White,* 890 F.2d at 1419. Accordingly, the judgment of the district court denying Hogan's motion to suppress must be reversed.[1]

For the reasons discussed, we reverse the judgment of the district court and remand the case for further proceedings in accordance with this opinion.

---

1. Hogan's remaining contentions of error lack merit.